```
                   UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF MISSISSIPPI
                         JACKSON DIVISION
```

FRED M. HAAG                                              PLAINTIFF

VS.                             CIVIL ACTION NO. 3:07CV387TSL-MTP

INFRASOURCE CORPORATE SERVICES, LLC                      DEFENDANTS
F/K/A INFRASOURCE CORPORATE SERVICES, INC.
AND DAVID R. HELWIG, INDIVIDUALLY

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants Infrasource Corporate Services, LLC, f/k/a Infrasource Corporate Services, Inc. and David R. Helwig for judgment affirming the arbitration award, pursuant to § 9 of the Federal Arbitration Act (FAA), 9 U.S.C. § 1, et seq. In opposition to the motion, plaintiff Fred M. Haag filed a "combined motion to lift stay and vacate and/or modify the arbitration award," pursuant to 9 U.S.C. §§ 10 and 11, which is opposed by defendants. Finally, before the court are the parties' competing motions for sanctions under Rule 11 of the Federal Rules of Civil Procedure, which are opposed.[1] Having considered the parties' memoranda, the court concludes that defendants' motion for judgment affirming the arbitration award is

---

[1] In some respects, the briefing on plaintiff's motion for sanctions amounted to an effort to supplement the briefing on the substantive motions. As neither party sought leave to do so, the court did not consider these new arguments and certainly did not consider evidence not presented to the arbitrator in reaching its decision on the substantive motions.

well taken and should be granted and that the remaining motions are due to be denied.

In July 2007, plaintiff filed suit against defendants, his former employers, asserting various causes of action related to his April 2007 termination. Following the court's September 17, 2007 order granting defendants' motion to compel arbitration, Haag proceeded to arbitration on claims for breach of contract and for stock options. His principal claim was that defendants breached his "Management Agreement" by refusing to allow him the severance wages and benefits due upon termination under the terms of the agreement. Defendants, on the other hand, maintained that during his tenure, Haag had improperly received a housing allowance and had additionally improperly requested and received various other expenses (including but not limited to a *per diem* allowance, automobile allowance, and air fare), to which he knew or should have known he was not entitled; that this amounted to "gross misconduct" under his Management Agreement's definition of "cause";[2] and that as a result of his termination for "cause," he

---

[2] In a May 7, 2007 letter detailing the reasons for his termination, InfraSource asserted that Haag
> knowingly authorized reimbursement of expenses and company-paid perks for [his] own benefit without approval, including a $500/week per diem for [him]self, an automobile allowance of $1,000 per month, a housing allowance of $1,216 per month and personal airline travel expenses in excess of $18,000. At the same time, [Haag] [was] receiving these unauthorized payments, [he was] submitting expense statements and being reimbursed for business-related expenses, frequently without the

2

had no right under the terms of the agreement to the severance benefits or stock options prescribed by the agreement.[3]

On August 2, 2011, the arbitrator dismissed Haag's claims upon finding there was "cause" for Haag's termination. The arbitrator recited the facts, as follows:

> Claimant entered into an employment contract with Respondent entitled "Management Agreement" on August 30, 2004. The management agreement provided that Claimant would be employed in the position of Senior Vice President-Electrical, or in such other executive capacity or capacities at the same level of seniority as may be determined from time to time by the CEO of Infrasource. However, Respondent decided to assign Claimant to troubleshoot its largest customer, Exelon, in the fall of 2004, to which Claimant never objected. Subsequently, Claimant's former employer filed suit against Claimant for breaching his covenant not to compete by joining Infrasource. As part of the settlement of that litigation, the parties agreed that Claimant would not serve as "Senior Vice President-Electrical" and would remain on the Exelon engagement until his obligations under the covenant expired. In

---

   approvals required per the Company's Delegation of authority.
   ...
   [E]ven after being reprimanded for not abiding by these policies, [Haag] continued to misappropriate company funds and paid [him]self and others amounts which were not authorized and in violation of company policies.
   ...
   Additionally, [Haag] received a housing allowance even though [he was] living in an apartment which was paid for by another employee who was being reimbursed for such expense.

   [3]   Haag had originally sued for wrongful termination, in addition to breach of contract, but eventually dropped that claim, acknowledging that under Pennsylvania law, which governed the parties' agreement by virtue of a choice-of-law provision therein, defendant had the right to terminate his employment for a good reason, a bad reason, or no reason at all.

>August of 2005, Haag became President of Infrasource
>Transmission Services "ITS".
>
>In 2006, Infrasource conducted an internal audit of
>its employee reimbursements for living expenses to
>insure that their policies and procedures complied with
>IRS laws and regulations.  On or about November 13,
>2006, Respondent's Director of Organizational
>Development, Martha A. Christinziano, sent Claimant an
>e-mail inquiring into his relocation expenses.  Claimant
>responded that he rented a house for a year at $1000 per
>month and he was reimbursed for this expense.  He
>further stated that "As of September 2006, I pay for all
>of my personal expenses and housing now."  Subsequently,
>Claimant met with Respondent's Chief Financial Officer,
>Craig York, who confronted him about his investigation
>into Claimants's reimbursement for expenses and provided
>him a spreadsheet which indicated that he received
>reimbursement for housing expenses after 2006.  In
>addition, York also inquired about Claimant's
>reimbursement for plane tickets to Mississippi where he
>maintained a home.  Subsequently, Claimant met with his
>supervisor Peter Walier, Executive Vice President-
>Electric, and Craig York regarding the improper expense
>reimbursements.  Claimant then later attempted to
>correct the problem by tendering a check to Respondent
>in the amount of $12,129.30.
>
>On April 1, 2007, Walier met with Claimant and
>offered him the choice to resign instead of being
>terminated for cause for gross misconduct under the
>provisions of the management agreement.  Thereafter, on
>April 26, 2007, Claimant provided notice to the
>Respondent of his intent to terminate his management
>agreement for good reason contained in the same
>agreement.  On May 7, 2007, Respondent's general counsel
>sent Claimant a letter indicating that he was terminated
>for cause for gross misconduct that was incapable of
>being cured.

In his "discussion," after noting the Management Agreement's definition of "cause" as "the willful engaging by executive in gross misconduct materially and demonstrably injurious to the company," the arbitrator wrote the following:

4

> The facts are not in dispute that Claimant submitted improper requests for expense reimbursements, and but for the company-wide audit, the Respondent would have never discovered the problem. Claimant was in a key position of leadership in the company and should have been held to the highest standards of conduct. If there was any question in his mind about the propriety of his request, he should have discussed it with Chief Financial Officer Craig York or his immediate supervisor Peter Walier. The fact that Claimant tendered a reimbursement check to the company of $12,129,30 confirms that he knew or should have known that the funds he received were improper. The letter from Respondent's General Counsel Lofton of May 7, 2007 indicates that the final audit disclosed that Claimant had misappropriated in excess of $80,000. Certainly this conduct constitutes gross misconduct that is materially and demonstrably injurious to the company.

Subsequently, on October 4, 2011, the arbitrator issued a decision addressing and denying Infrasource's counterclaim for fraudulent misrepresentation, by it which to sought to recover monies alleged to have been wrongfully obtained by Haag. As it pertained to the housing allowance, the arbitrator concluded that while Haag's improper receipt of housing expenses amounted to cause for his termination, InfraSource had failed to carry its burden to show fraud by the higher *clear and convincing evidence* standard. With respect to the other alleged business expenses (e.g., airline tickets, and *per diem* and car allowances), he determined that due to the vagueness of the parties' contract regarding reimbursement for business expenses and to InfraSource's failure to provide specific guidelines as to business expenses, Infrasource could not

5

prove *by clear and convincing evidence* that Haag's claim for such expenses was fraudulent.

    Defendants have moved for judgment confirming the award pursuant to § 9 of the FAA, and plaintiff has moved to vacate the award pursuant to FAA § 10, or alternatively for modification pursuant to FAA § 11. The party moving to vacate the arbitral award bears the burden of proof. See <u>In re Arbitration Between Trans Chem. Ltd. & China Nat'l Mach. Import & Export Corp.</u>, 978 F. Supp. 266, 303 (S.D. Tex. 1997) (Lake, J.), <u>aff'd</u>, 161 F.3d 314 (5th Cir. 1998). The FAA provides the means for enforcing arbitral awards by way of a judicial decree confirming, vacating, modifying or correcting an award. See <u>Hall St. Assocs., LLC. v. Mattel, Inc.</u>, 552 U.S. 576, 128 S. Ct. 1396, 1405, 170 L. Ed. 2d 254 (2008). Section 9 directs that a court "must" confirm an arbitration award "unless" it is vacated, modified or corrected "as prescribed" in §§ 10 and 11. See <u>Schlobohm v. Pepperidge Farm, Inc.</u>, 806 F.2d 578, 580 n. 2 (5th Cir. 1986).

    Section 10(a) of the FAA establishes the *only* grounds on which a court may vacate and set aside an arbitration award:

    (1) where the award was procured by corruption, fraud, or undue means;

    (2) where there was evident partiality or corruption in the arbitrators, or either of them;

    (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and

6

>     material to the controversy; or of any other misbehavior
>     by which the rights of any party have been prejudiced;
>     or
>
>     (4) where the arbitrators exceeded their powers, or so
>     imperfectly executed them that a mutual, final, and
>     definite award upon the subject matter submitted was not
>     made.

9 U.S.C. § 10(a).  Section 11 provides the *only* grounds for modification of an award:

>     (a) Where there was an evident material miscalculation
>     of figures or an evident material mistake in the
>     description of any person, thing or property referred to
>     in the award.
>
>     (b) Where the arbitrators have awarded upon a matter not
>     submitted to them, unless it is a matter not affecting
>     the merits of the decision upon the matter submitted.
>
>     (c) Where the award is imperfect in matter of form not
>     affecting the merits of the controversy.
>
>     The order may modify and correct the award, so as to
>     effect the intent thereof and promote justice between
>     the parties.

9 U.S.C. § 11.

The court's review of an arbitration award made under the FAA is "extraordinarily narrow" and "exceedingly deferential," Prestige Ford v. Ford Dealer Computer Servs., Inc., 324 F.3d 391, 393 (5th Cir. 2003).  The court must "defer to the arbitrator's decision when possible."  Am. Laser Vision, P.A. v. Laser Vision Inst., L.L.C., 487 F.3d 255, 258 (5th Cir. 2007) (internal quotation marks omitted).  See also Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co., 918 F.2d 1215, 1218 (5th Cir. 1990)

7

(court "will defer to the arbitrators' resolution of the dispute whenever possible"). And, as the Supreme Court made clear in <u>Hall Street Associates</u>, <u>supra</u>, vacatur or modification is available *only* on the limited grounds set forth in §§ 10 and 11. 552 U.S. at 588, 128 S. Ct. at 1405. No nonstatutory bases exist for vacating or modifying an award, and parties may not contract to expand judicial review beyond the bases set forth in the statutes. <u>Id</u>., 128 S. Ct. at 1405 (reasoning that "[a]ny other reading opens the door to the full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process,' and bring arbitration theory to grief in post-arbitration process") (citation omitted).

In <u>Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co.</u>, the court observed that where parties have bargained for an arbitration process which would determine the facts and construe disputed contract provisions, there is no injustice in holding them to their bargain. 918 F.2d 1215, 1219 (5th Cir. 1980) (citing <u>Manville Forest Prod. Corp. v. United Paperworkers Int't Union</u>, 831 F.2d 72, 74 (5th Cir. 1987)). Consistent with the parties' choice, therefore, it is for the arbitrator, not the court, to decide the merits of the parties' dispute; and it is for the arbitrator, not the court to find the facts and to decide and apply the law. This point was highlighted by the court in

8

Kergosien v. Ocean Energy, Inc., 390 F.3d 346 (5th Cir. 2004), rev'd on other grounds, Citigroup Global Markets, Inc. v. Bacon, 562 F.3d 349 (5th Cir. 2009), when it stated:

> "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509, 532 U.S. 1015, 121 S. Ct. 1724, 149 L. Ed. 2d 740 (2001) (citing United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987)). "If 'an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" Id. (quoting Misco, 484 U.S. at 38, 108 S. Ct. 364). "[E]ven 'serious error' on the arbitrator's part does not justify overturning his decision, where, ... he is construing a contract and acting within the scope of his authority." Id. at 510, 121 S.Ct. 1724 (quoting Misco, 484 U.S. at 38, 108 S.Ct. 364). "Established law ordinarily precludes a court from resolving the merits of the parties' dispute on the basis of its own factual determinations, no matter how erroneous the arbitrator's decision." Id. (citing Misco, 484 U.S. at 40, n.10, 108 S. Ct. 364). "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." Id. (quoting Misco, 484 U.S. at 39, 108 S.Ct. 364). " '[C]ourts ... have no business weighing the merits of the grievance [or] considering whether there is equity in a particular claim.'" Id. (quoting Misco, 484 U.S. at 37, 108 S.Ct. 364).

Kergosien, 390 F.3d at 357-358. See also Hamel-Schwulst v. Country Place Mortg. Ltd., No. 10-60143, 2010 WL 5421299 (5th Cir. Dec. 30, 2010) ("[C]ourts do not vacate an arbitration award based on the merits of a party's claim.") (citing United Paperworkers

9

Int'l Union v. Misco, Inc., 484 U.S. 29, 108 S. Ct. 364 (1987)); Apache Bohai Corporation LDC v. Texaco China BV, 480 F.3d 397, 401 (5th Cir. 2007) (holding that an award may not be vacated or modified for a mere mistake of fact or law) (citing Brabham, 480 F.3d at 380).

Although an award may not be vacated or modified based on a mere mistake of fact or law, in Valentine Sugars, Inc. v. Donau Corp., the Fifth Circuit, citing § 11(a) as allowing for vacating an award "[w]here there was an evident material ... mistake in the description of any person, thing, or property referred to in the award,"[4] held that

> "where the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award, it can fairly be said that the arbitrator 'exceeded [his] powers or so imperfectly executed them' that vacation may be proper."

981 F.2d 210, 214 (5th Cir. 1993) (quoting National Post Office v. United States Postal Serv., 751 F.2d 834, 843 (6th Cir. 1985)(in turn quoting FAA § 10(a)(4)).  In the case at bar, Haag argues that the arbitrator's decision reflects that he "strongly relied" on an "unambiguous and undisputed mistake of fact" in making his award and thereby "exceeded [his] powers or so imperfectly executed them" that vacation is proper according to the Fifth

---

[4] In fact, however, § 11(a) governs modification, not vacation, of an arbitral award.

10

Circuit's holding in Valentine.  Specifically, he argues that the arbitrator mistakenly found that "*[t]he facts [were] not disputed* that Claimant submitted improper requests for expense reimbursement, and but for the company-wide audit, [Infrasource] would have never discovered the problem."  He maintains that the record contained no evidence that he admitted submitting improper reimbursement requests; and he contends that since the arbitrator strongly relied on this mistaken finding in making his award, then in keeping with Valentine, the award must be vacated.  For their part, defendants initially take the position that Valentine is no longer valid in light of Hall Street, a position the court rejects.[5]  But they argue alternatively that even under Valentine,

---

[5]     In response to plaintiff's motion, defendants principally argue that the judicially-created nonstatutory ground for relief from an arbitral award adopted in Valentine Sugars, Inc. v. Donau Corp. 981 F.2d 210, 214 (5th Cir. 1993), did not survive the Supreme Court's decision in Hall Street Associates, LLC. v. Mattel, Inc., 552 U.S. 576, 128 S. Ct. 1396, 1405, 170 L. Ed. 2d 254 (2008).  However, it is clear the Fifth Circuit did not consider that it was creating or adopting a nonstatutory basis for relief in Valentine but rather that it was recognizing that an arbitrator "exceed[s] his powers or so imperfectly execute[s] them"–which is a statutory basis for vacatur–when he strongly relies on an unambiguous and undisputed mistake of fact in making his decision.  See Valentine, 981 F.2d at 214 (describing this as circumstance in which "it can fairly be said that the arbitrator 'exceeded [his] powers or so imperfectly executed them' that vacation may be proper") (quoting National Post Office v. United States Postal Serv., 751 F.2d 834, 843 (6th Cir. 1985)); see also Bradham v. A.G. Edwards & Sons, Inc., 376 F.3d 377, 384 (5th Cir. 2004) (explaining that Valentine "simply restates the well-established essence test" which is not a nonstatutory ground for vacatur).  Moreover, the Fifth Circuit appears to view Valentine as surviving Hall Street.  See Woods v. P.A.M. Transport

11

the arbitrator's award must be confirmed because the arbitrator's award is "rationally inferable" from the facts before him.

In Valentine, the court held that an "unambiguous" and "undisputed" mistake of fact, upon which the arbitrator strongly relied in rendering his award, may support vacating the award. Valentine, 981 F.2d at 214. The court "interpret[ed] the term 'undisputed' to mean [a court] should look to see whether there is any rational basis for disputing the truth of the fact." Id. Haag insists that nothing in the arbitration record supported the arbitrator's assertion that "the facts are not in dispute that Claimant submitted improper requests for expense reimbursements." To the contrary, the evidence before the arbitrator conclusively established that he was initially granted a monthly housing allowance of $1213, which payments went directly to his and his wife's checking account via direct deposit without any request being submitted by him. He maintained throughout the arbitration proceeding that effective July 2006, upon the completion of company paperwork effecting a transfer of his apartment lease to a coworker, he assumed the monthly housing payments to him had ceased, and only after being confronted in November 2006 about his continued receipt of a housing allowance did he learn from his

---

Inc.-L.U., 440 Fed. Appx. 265, 269-270, 2011 WL 3831306, 3 (5th Cir. Aug. 23, 2011) (post-Hall Street opinion quoting Valentine and citing arbitrator's strong reliance on unambiguous and undisputed mistake of fact as grounds for modification of award).

wife (who handled the couple's finances) that monthly housing allowance deposits were still being made to his account.  Haag insists that in view of Haag's evidence that he did not submit requests for reimbursement of housing expenses and did not know he was receiving housing expense payments, then the arbitrator's finding that the facts were not in dispute that he had submitted improper expense requests was an "unambiguous and undisputed mistake of fact."

In the court's opinion, however, the arbitrator's finding that the facts were not in dispute that Haag submitted improper requests for expense reimbursements was not an *unambiguous* mistake of fact.  Haag interprets the arbitrator's challenged statement as finding as a fact that Haag admitted he submitted improper requests for reimbursement of *housing* expenses only.  However, it is hardly clear that the arbitrator's finding was intended to be limited to housing expenses.  The arbitrator's awards, considered separately and/or collectively, are not entirely clear, and certainly leave room for an interpretation that does not involve any unambiguous and  undisputed mistake of fact.  See Six Flags Over Texas, Inc. v. International Broth. of Elec. Workers, Local No. 116, 143 F.3d 213, 215 (5th Cir. 1998) (stating that "[i]f an arbitration award is ambiguous, we resolve all doubts in favor of arbitration") (citing Valentine, 981 F.2d at 213); see also Valentine, 981 F.2d at 213 (stating that "[i]n determining whether

13

the arbitrator exceeded his jurisdiction, we resolve all doubts in favor of arbitration) (citing <u>Moses H. Cone Memorial Hosp. v. Mercury Constr.</u>, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983)).

It was undisputed that plaintiff submitted requests for reimbursement for expenses other than housing expenses. Defendants maintained that Haag was not entitled to reimbursement for many of these other expenses; that he knew or should have known that he was not entitled to receive payment for these expenses; and that his requests therefore were improper. Ultimately, the arbitrator appears to have found, at least implicitly, that Haag's requests for reimbursement for these other expenses were improper. For example, he referenced the final audit cited in defendants' termination letter, which audit, the arbitrator observed, disclosed that Haag misappropriated in excess of $80,000. The arbitrator wrote, "Certainly *this conduct constitutes gross misconduct* that is materially and demonstrably injurious to the company." (Emphasis added). This $80,000 figure indisputably included significant expenses other than housing expenses. Although ultimately, in ruling on InfraSource's counterclaims, the arbitrator concluded that InfraSource had failed to prove by clear and convincing evidence that Haag had defrauded the company by seeking and recovering expenses *beyond housing expenses* to which he was not entitled, the arbitrator does

14

appear to have found that these expenses were not properly recoverable, and that Haag's submission of requests for reimbursement were improper. Thus, it is undisputed that Haag submitted requests for reimbursements, which the arbitrator appears to have found based on the undisputed facts of record to have been improper. So interpreted, <u>Valentine</u> affords Haag no basis for relief from the arbitral award since Haag cannot show that the arbitrator made an unambiguous and undisputed mistake of fact.

Even if the court assumed for the same of argument that Haag had made this showing, he still has not sustained his burden to establish a basis for relief from the award. In <u>Valentine</u>, the court concluded that an arbitrator's award must be affirmed if the proponent of the award "can provide any rational explanation for the award inconsistent with [the opponent's] theory that the award had to be based upon [the alleged mistake of fact]." 981 F.2d at 214 (citing <u>Anderman/Smith Co. v. Tennessee Gas Pipeline Co.</u>, 918 F.2d 1215, 1218 (5th Cir. 1990) (award must be affirmed if it is "rationally inferable from the agreement"). If the court cannot determine with certainty that the arbitrator relied on the unambiguous and undisputed mistake of fact, the award must be affirmed. <u>Id.</u> (emphasis added).

Even in the absence of a finding that it was undisputed that plaintiff had submitted improper requests for expense

15

reimbursement, the arbitrator's conclusion that there was cause for his termination is rationally inferable from the facts before the arbitrator. Before the arbitrator, InfraSource pointed to a November 2006 e-mail from Haag to Martha Christinziano, InfraSource's Director of Organizational Development, where in a response to her inquiry regarding his expenses, Haag represented that, as of September 2006, he was paying all of his personal and housing expenses. This representation was later shown to be untrue when an audit revealed that he was continuing to receive payments for housing and other expenses. Moreover, the finding which appears to have been ultimately determinative to the award was that Haag, a key employee held to a higher standard, "knew or should have known that the funds he received were improper." This finding was based on the record as a whole, as evidenced by the arbitrator's discussion of the evidence, and not merely on a putative finding that plaintiff did not dispute that he had submitted improper requests for reimbursement.[6]

For the foregoing reasons, the court cannot conclude that the arbitrator exceeded his powers in granting InfraSource's motion for summary judgment. Accordingly, as InfraSource has provided a rational explanation for the award inconsistent with Haag's

---

[6] Indeed, had the arbitrator based his decision on an admission by plaintiff that he submitted improper requests, the remainder of his discussion of the evidence would have been unnecessary and superfluous.

16

theory, its motion to affirm the arbitrator's decision will be granted and Haag's combined motion to lift stay and vacate and/or modify the arbitration award will be denied.[7]

Based on the foregoing, it is ordered that defendants' motion to affirm the arbitrator's decision is granted and Haag's combined motion to lift stay and vacate and/or modify the arbitration award is denied.

SO ORDERED this the 5th day of March, 2012.


                    /s/ Tom S. Lee_____
                    UNITED STATES DISTRICT JUDGE

---

[7] In light of the court's conclusion that at the present time, Valentine remains viable, defendants' motion for sanctions will be denied. This being said, however, the court is also not persuaded that the defendant's "inaccurate reading" of plaintiff's "combined motion to lift stay and vacate and/or modify the arbitration award" warrants the imposition of sanctions against InfraSource. Accordingly, the parties' dueling motions for sanctions are denied.